17-11707
SECT. R MAG. 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BREJETTE BUNDY-FORD, Plaintiff

v.

XAVIER UNIVERSITY OF LOUISIANA, Defendant

## COMPLAINT

### JURISDICTION AND VENUE

This case arises under 42 U.S.C. § 12101ADA and Retaliation. Jurisdiction lies under 28 USC. Section 1343. Venue in this district is proper because all conduct alleged within this complaint occurred within this district.

### PARTIES

1. The Plaintiff, in this matter, is BREJETTE FORD.
2. The Defendant, in this matter, is Xavier University of Louisiana (hereinafter referred to as XULA). The Defendant employs more than 500 people.

### RIGHT TO SUE LETTER

Plaintiff received an EEOC Right to Sue letter. Said letter was dated July 26, 2017 and Plaintiff received the letter on August 1, 2017. Therefore, this complaint is timely filed. Further, the EEOC charge encompasses all of the allegations in this complaint and, to the extent not encompassed, these allegations would have been reached in the course of an EEOC investigation.

### FACTS

1.

I initially interviewed Defendant, XULA on June 2, 2016. My final interview was conducted on June 8, 2016.

TENDERED FOR FILING

NOV 1 - 2017

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

2.

On June 10, 2016, Kendra Tircuit, Director of Advancement Services, contacted me to formally offer me the position. During this conversation, Ms. Tircuit stated that she would be my immediate supervisor and that she had additional reservations about me joining her team because she was not interested in a "know-it-all" nor did she want someone to "take over" her department.

3.

Additionally, Ms. Tircuit informed Plaintiff that Xavier has their own way of doing things and that she should humble herself because she was too confident in her abilities.

4.

Plaintiff attempted to reassure Ms. Tircuit that such was not her intention and she was simply excited about the new position. Nonetheless, I was offered the positon and began my employment with Defendant on July 5, 2016.

5.

During the interview process, Mr. Tircuit informed me of the workday start times. Ms. Tircuit informed me that there were three workday options, 8:00 am until 4:00 pm, 8:30 am until 4:30 pm and 9:00 am until 5:00 pm. During this process, Plaintiff informed Ms. Tircuit that she would work from 9:00 am until 5:00 pm until her children started school. Additionally, Plaintiff informed Ms. Tircuit that, after the school year started, she would work from 8:00 am until 4:00 pm.

6.

Upon beginning her employment with Defendant, Plaintiff was under the assumption that she could alternate her work schedule accordingly, as long as the times complied with those outlined by Ms. Tircuit during the interview process. Thus, Plaintiff reported to work as she had informed Ms. Tircuit she would during the interview process. However, a few weeks later, Ms. Tircuit informed Plaintiff that she would have to choose a single work schedule and stick to it. Plaintiff apologized for any confusions and reiterated to Ms. Tircuit that she would work from 9:00 am until 5:00 pm until her children started school. Additionally, Plaintiff informed Ms. Tircuit that, after the school year started, she would work from 8:00 am until 4:00 pm. Plaintiff asserts that Ms. Tircuit was in agreement with her work schedule.

7.

Plaintiff asserts that she informed Ms. Tircuit that her children started school and that she would be switching her work schedule to 8:00 am until 4:00 pm. Plaintiff asserts that one month after this notification, she left work after 4:00 pm on two occasions. One day she left at

4:10pm and another day at 4:18pm.  Plaintiff asserts that she received an angry phone call from Ms. Tircuit informing her that she could not "come and go as she pleased." Plaintiff reminded Ms. Tircuit of their agreed upon schedule after her children started school.  Nonetheless, Plaintiff received a formal write-up from Ms. Tircuit for violation of Defendant's Time and Attendance Policy.

8.

Plaintiff asserts that on or about September 8 or 9, 2016, Ms. Tircuit approached her regarding changing a procedure that she was working on. Plaintiff asserts that upon expressing confusion regarding the steps that Ms. Ticuit wanted her to put in place, Ms. Tircuit became aggressive and told her to "just do it."  Plaintiff asserts that she explained to Ms. Tircuit that she could not write instructions for a procedure she was confused about.

9.

Plaintiff asserts that Ms. Tircuit approached her and stood over her.  Plaintiff, asserts that she began to get nervous and became short of breath. Plaintiff took some deep breaths and requested that Ms. Tircuit walk through the steps again because she was still unsure of what she was trying to put in place. Plaintiff asserts that while walking through the steps, Ms. Tircuit's responses were aggressive and short. Plaintiff asserts that she planned to email Ms. Tircuit regarding her treatment of her during this encounter and actually drafted an email to send to Ms. Tircuit.  However, Plaintiff decided not to send the email unless another uncomfortable encounter occurred.

10.

At the end of her 90-day probation period, Plaintiff was summoned to Ms. Tircuit's office and presented with her evaluation.  The VP of Institutional Advancement, Gia Soublet, was in attendance when Ms. Tircuit discussed the evaluation with Plaintiff.  Ms. Tircuit's instructed Plaintiff to read the evaluation as she and Ms. Soublet watched.

11.

Plaintiff asserts that all of the negative remarks within the evaluation pertained to her physical attributes, which were described as arising to the level of possibly needing "sensitivity training." Plaintiff asserts that upon discussing the evaluation, she became nervous, closed her eyes and took deep breaths.  Plaintiff asserts that upon seeing this, Mrs. Soublet stated "Oh, I see the attitude you [Kendra Tircuit] were talking about."

12.

Mrs. Soublet informed Plaintiff that she could no longer take deep breaths nor express her feelings because they do not tolerate that type of behavior. Plaintiff attempted to explain that

her actions are involuntary and that these actions, her pauses and breathing, were the reasons why her probation was extended.

13.

Plaintiff asserts that after Mrs. Soublet left the office, she continued to speak with Mrs. Tircuit and tried to reassure her that her physical attributes were involuntary. Plaintiff asserts that Ms. Tircuit stated that it was important for supervisors to know what physical or mental problems a person has so that the supervisor would not jump to conclusions. Plaintiff asserts that she assumed Ms. Tircuit was attempting to be sympathetic to her situation. As a result, Plaintiff asserts that she felt the need to inform Ms. Tircuit of several health problems she had, including Post-Partum Depression.

14.

On Tuesday, October 11, 2016, Plaintiff was called into Ms. Soublet's office. In this meeting, Ms. Tircuit claimed that Plaintiff had created a massive problem in Defendant's database, on Friday, October 7, 2016, and was unwilling to correct the situation. Ms. Tircuit also alleged that upon informing Plaintiff of the problem, Plaintiff refused to accept responsibility for the problem and refused to help to fix the problem.

15.

Plaintiff informed Ms. Soublet that she told Ms. Tircuit that she was aware of the problem but that the problem was not created by her but rather do to a glitch in the system. Plaintiff asserts that she told Ms. Tircuit that there was a quick and easy fix to the glitch but she would still have to investigate the extent of the problem.

16.

Plaintiff informed Ms. Soublet that after conducting her investigation, Plaintiff found a glitch in the system had in fact occurred and she spoke with Mrs. Tircuit about possible solutions. Ms. Tircuit suggested that Plaintiff query a specific word to fix the issue. Plaintiff suggested to Ms. TIrcuit that a word query would not be an effective method because it would yield to many results. Plaintiff suggested that she needed to find the pattern so she could isolate the problem and correct it. Plaintiff informed Ms. Soublet that she also emailed Ms. Tircuit the same day (Friday, October 7, 2016) to inform her that the problem was located and that she would correct the issue the following week.

17.

Plaintiff asserts that she asked Ms. Tircuit why she was presenting falsehoods about her and why was she targeting her. Plaintiff asserts that Ms. Tircuit, in the presence of Ms. Soublet, snapped at her and continued to state that she was insubordinate and refused to wait for

approval before acting. Plaintiff informed Ms. Soublet that she never acted without prior approval and had emails containing many of the approvals she was given. Plaintiff asked Ms. Soublet how was she supposed to feel like a part of a team when Ms. Tircuit had no problem lying about her character to the VP, while in her presence.

18.

Plaintiff asserts that she felt compelled to resign my position and informed Ms. Soublet and Mr. Tircuit that "I quit." Plaintiff asserts that she walked into her office, closed the door and began to cry. Plaintiff asserts that Ms. Soublet followed her into her office and told me that since she left the meeting she would have to fire her but stated that she wished Plaintiff had come to her sooner about how she was feeling. Plaintiff asserts that she told Ms. Soulblet that Ms. Tircuit pretends to be nice but has a very nasty demeanor with her staff. Plaintiff asserts that she also informed Ms. Soublet that she was not the only person on the staff that Ms. Tircuit treated unfairly and that Defendant should investigate Mrs. Tircuit.

19.

Plaintiff asserts that these actions were the result of Defendant, Xavier University of Louisiana, discriminating against her due to her disability, in violation of the Americans with Disability Act, and in Retaliation of her informing Defendant of her disabilities.

PRAYER FOR RELIEF

Plaintiff prays for past and future lost wages, emotional distress or liquidated damages as appropriate, attorney fees, cost, all of the legal and equitable relief, and trial by jury.

Respectfully submitted

*Brejette Bundy-Ford*
Brejette Bundy-Ford, Plaintiff
Pro Se
22 Vicksburg Court
Harvey, LA 70058
(504) 715-4663

Please do not issue summons.
Notice and waiver will be attempted.